GLENN W. PETERSON (CA Bar Assn. No. 126173)
**MILLSTONE, PETERSON & WATTS, LLP**
2267 Lava Ridge Court, Suite 210
Roseville, CA 95661
Telephone: (916) 780-8222
Fax No: (916) 780-8775

Attorneys for Plaintiff
Connor Sport Court, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

(SAN JOSE DIVISION)

| | |
|---|---|
| CONNOR SPORT COURT INTERNATIONAL, INC., a Delaware Corporation,<br><br>          Movant,<br><br>     vs.<br><br>GOOGLE, INC., a California Corporation,<br><br>          Respondent. | CASE NO. CV-07-8025 MISC.<br><br>**CONNOR SPORT COURT INTERNATIONAL, INC.'S *AMENDED* NOTICE OF MOTION AND MOTION TO ENFORCE SUBPOENA DUCES TECUM; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Magistrate Judge:<br>Richard Seeborg<br><br>Date:   December 26, 2007<br>Time:  9:30 a.m.<br>Crtrm:  4 |

   NOTICE IS HEREBY GIVEN of the filing of this motion pursuant to Rule 45(c)(2)(B) of the Federal Rules of Civil Procedure by Connor Sport Court International, Inc. ("Sport Court"), Plaintiff in *Connor Sport Court International, Inc. v. Rhino Sports, Inc. et al.* (Case No. CV- 02-1815-PHX-JAT and consolidated Case No. CV 06-3066 PHX JAT). This motion seeks to compel Respondent, Google, Inc. ("Google"), to comply with the subpoena that counsel for Sport Court issued to it, and to produce and permit for inspection and copying the materials specified in that subpoena. Pursuant to Local Civil Rule 72-1(a), moving party's counsel has attempted to confer

/ / /

with counsel for Google with respect to this motion. In response, however, Google has produced only one document and refuses to otherwise comply with the subpoena.

## I. BACKGROUND

### A. Nature of Suit Between Sport Court and Rhino Sports, Inc.

On March 23, 2004, Sport Court and Rhino Sports, Inc. ("Rhino") executed a settlement agreement (the "Settlement Agreement"). In connection with the Settlement Agreement, Rhino stipulated to, and the court entered, a permanent injunction precluding Rhino's use of the SPORT COURT mark, including the use of SPORT COURT, or any similar terms, as an adword. Despite the Injunction and Settlement Agreement, Rhino has continued to appear as a sponsored link on the Google search engine when a user enters the term "sport court" as a search term. Sport Court again filed suit against Rhino on December 21, 2006 alleging, among other things, breach of the settlement agreement and continued infringement of the SPORT COURT mark.

In defense of Sport Court's claims, Rhino contends, among other things, that because third parties purchase the SPORT COURT mark as an adword, from Google and others, Rhino can also purchase SPORT COURT as an adword. Despite these allegations, Google has refused to produce information in response to the subpoena which has a direct bearing on Sport Court's claims and Rhino's defenses.

### B. Sport Court's Efforts to Discover Facts Related to Rhino's Use of the SPORT COURT Mark and Rhino's Defense Regarding Trademark Infringement and Breach of Contract.

As part of its discovery efforts, Sport Court issued a subpoena *duces tecum* to Google, Inc. dated June 14, 2007 (attached as Exhibit A) seeking information in two broad categories relating to 1) third party use of the term "Sport Court" as an adword (see Ex. A, Requests Nos. 1-5) and 2) Rhino's use of the SPORT COURT mark and other terms as adwords (see Exhibit A, Request Nos. 6-10). As noted below, Google has provided only one document in response to these requests.

/ / /

/ / /

/ / /

**1. Google refuses to provide any information concerning third-party use of Sport Court.**

Google originally agreed to produce limited information relating to requests 1 through 5, which seek information concerning third parties who purchase the term SPORT COURT (or variations thereof) as an adword. Google later recanted, claiming that the information requested by Sport Court was either unduly burdensome or irrelevant. (See e-mail from Google to counsel for Sport Court attached hereto as Exhibit B).

After further discussions with Google, Sport Court voluntarily narrowed requests one through five to the following:

1. A list of all persons, organizations, and/or entities who have purchases the terms "Sport Court," "Sports Court," "Sport Courts," and/or "Sports Courts" as adwords from Google since March 23, 2004 to the present.
2. The dates that the terms referenced above were purchased; and
3. The monthly volume search trends for those terms from March 23, 2004 to present.

Despite these narrowing constructions, Google still refuses to comply with these requests, and has produced no information in response to these requests.

**2. Google produces two pages of Rhino data.**

With respect to requests 6 to 10, which seek information concerning Rhino's use of adwords, Google produced a single two page document which is a summary of search terms purchased on Rhino's behalf by its advertising company, CyberMark International, Inc. ("CyberMark"). Google has informed Sport Court that it will not produce any other documents in response to any of Sport Court's requests.

Google's response to requests six through ten is grossly inadequate. (See e-mail from Google to counsel for Sport Court attached hereto as Exhibit C). Google possesses information related to the title and text of each sponsored ad, the number of clicks each sponsored ad received, Rhino's bidding history for the Sport Court mark, the cost to Rhino each time a consumer clicked on the Rhino add as a result of Rhino's purchase of the Sport Court mark, and the average position of the sponsored add on Google's search engine advertisements. This information is crucial to Sport

Court's damage calculations and also to establishing Rhino's unlawful use of the Sport Court mark, including its purchase of the Sport Court mark as an adword.

## II.   ARGUMENT

The discovery requested from Google is needed so that Sport Court can: (1) respond to affirmative defenses posited by Rhino, (2) address Sport Court's primary claims of liability, and (3) assist Sport Court in preparing its damages calculation. Having produced only one document, Google has not complied with its Rule 45 obligations. Moreover, none of the objections offered by Google excuse or justify its failure to comply with the subpoena.

### A.   Sport Court is Entitled to All Relevant Documents Possessed by Google.

Google primarily argues that the information sought in the subpoena is irrelevant, causes Google an undue burden, and that it is more easily obtained from Rhino, a party to the suit. Google's arguments, however, lack merit.

Federal Rules of Civil Procedure Rule 45 governs discovery from nonparties by subpoena and the scope of that discovery is the same as that prescribed under Rule 34. Under Rule 34, the rule governing the production of documents between parties, the proper scope of discovery is as specified in Rule 26(b). FED. R. CIV. P. 34, *See also Heat & Control, Inc. v. Hester Industries, Inc.*, 785 F.2d 1017 (Fed. Cir. 1986).

Rule 26 limits discovery where (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues. FED. R. CIV. P. 26.

Pursuant to Rule 26(b) "parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." *Barbara Wood v. Bista Manor Nursing Center Life Generations Healthcare, Inc. et al.*, No. C-06-01682-JW-PVT, 2007 U.S. Dist. Lexis22643 at *3 (N.D. Cal. March 16, 2007). "Relevancy for purposes of discovery, is defined broadly, although

it is not without ultimate and necessary boundaries." *Alberto Gonzales v. Google, Inc.*, 234 F.R.D. 674, 679-80 (N.D. Cal. 2006) (citing *Pacific Gas and Elec., Co. v. Lynch, No.* C-01-3023 VRW, 2002 WL 32812098, at *1 (N.D. Cal. August 19, 2002) (internal citations and quotations omitted).

### B. This Court Should Be Permissive in Construing Relevance.

Information sought by subpoena, as with any discovery request, must be reasonably calculated to lead to admissible evidence. However, "this requirement is liberally construed to permit the discovery of information which ultimately may not be admissible at trial." *Id*. Because this Court's connection with this case is ancillary to an action in another district, this Court "should be especially hesitant to pass judgment on what constitutes relevant evidence thereunder. Where relevance is in doubt…the court should be permissive." *Id*. at 681. Thus, to the extent the Court has doubt regarding relevance, it should order production.

### C. Third Party Use of "Sport Court" is Relevant.

In the present case, Rhino has argued that third party use of the SPORT COURT mark is a defense to claims made by Sport Court. Through discovery requests to Sport Court as well as numerous other third parties (including Google), Rhino continues to put these facts at issue in the case as part of its defense. Regardless of the strength of the merits of Rhino's defense, the identity of persons who have purchased the SPORT COURT mark (or variants of the mark) and the dates that those adwords were purchased are clearly relevant to issues raised by Rhino and constitute facts which Sport Court cannot obtain from any other party. Accordingly, the requested information is highly relevant to the issues raised by Rhino and is not duplicative.

Notably, Google agreed to produce the requested information but later recanted arguing that the requested information was irrelevant and unduly burdensome. Before changing its position, Google sent notices to all entities that would eventually appear on the list responsive to Sport Court's request. Accordingly, Google should only have to take minimal efforts in merely assembling a list of those entities already contacted and the dates those entities purchased the SPORT COURT mark as an adword. In addition to the above, Sport Court is willing to reimburse Google for reasonable expenses associated with compiling the above-referenced information thereby minimizing any financial burden the production may impose upon Google.

### D. Rhino's Use of Adwords is Relevant

Rhino has been enjoined from using the term "Sport Court" or any variations thereof, as an adword (see unsealed Permanent Injunction attached hereto as Exhibit D). The information provided by Google demonstrates that Rhino has violated that injunction and the related Settlement Agreement because Rhino has purchased from Google, terms such as "SPORT COURTS" as adwords. In order to calculate damages, as well as establish claims of willfulness, Sport Court is entitled to understand the total breadth of Rhino's adword purchase program, so that it can assess the total volume of adwords purchased and determine the relative value of the SPORT COURT terms to Rhino's business. Sport Court is also entitled to all email exchanges between Google and Rhino or its agents. Sport Court is also entitled to all documents concerning Google's relationship with Rhino and/or Rhino's agents.

Google itself has acknowledged the relevancy of Sport Court's requests 6 through 10 and claims that it has produced all documents in its possession which are responsive to these requests (See Exhibits B and C).

Despite Google's acknowledgement regarding relevancy, Google has produced only one document in response to Sport Court's subpoena. It is simply not credible to believe that Google has only the one document in its possession or control. Indeed, Sport Court's attorneys know from other matters where it has litigated this matter, that Google keeps voluminous records concerning the adwords purchased by its customers, the relative success or "hit rate" of those terms, as well as files concerning emails which contain communications between Google and its customers. Additionally, as a result of its discovery efforts in the underlying case, Sport Court has received copies of e-mail from Google directed to rhino@cybermarkintl.com, Rhino's advertising agency. Furthermore, Google's own production to Sport Court notes several e-mail addresses which were evidently used to maintain Rhino's Google account including, ldevoe@cybermakintl.com and lisa@cybermarkintl.com. It is simply not credible to believe Google has no emails from or to these or other email accounts relevant to this matter. Any communication between Google and CyberMark or Rhino, has been asked for, is relevant to the underlying case, and must be produced.

///

1  Google asserts that parties to the case should have all information requested in requests six
2  through ten and therefore this information should not have to be produced by Google. Google fails
3  to take into consideration that different parties have different document retention policies, make
4  different notes on documents, etc. Accordingly, any information Google has which is responsive to
5  requests six through ten must be produced.

6  Deposition testimony in this case has also established that a vast array of information
7  documents exists in Google's files, which Google has not produced. On September 27, 2007,
8  Rhino's agent, CyberMark, acknowledged that Google keeps detailed records regarding adword
9  usage which can be accessed from the internet via any Google representative with the proper account
10 information. While that record is currently under seal in this case, a copy of unsealed portions of the
11 transcript from the deposition in question will be brought to the hearing in this matter.

12 Perhaps more disturbing--and despite its claim that it has only one document concerning
13 Rhino's use of adwords--Google has provided more information in response to other subpoenas
14 addressing the very issue at stake here. For example, in response to a subpoena from Sport Court's
15 adversary in this matter, Google produced information for a third-party comprising the title and
16 content of the adword triggered advertisement, the maximum cost-per-click bid for the adword, the
17 number of clicks, the number of impressions, the average ad position and more. While this
18 information has been provided pursuant to a protective order and is not included herein, a copy of
19 the produced material in question will be brought to the hearing in this matter.

20 Additionally, in a past trademark infringement case involving Sport Court and Chamberlain
21 Landscaping ("Chamberlain"), Google produced detailed information regarding the title and content
22 of the Chamberlain's adword triggered advertisements, maximum cost-per-click bid for the adwords,
23 the number of clicks received, the number of impressions, the average ad position of Chamberlain's
24 advertisement and more. Similar information regarding CyberMark and/or Rhino was not provided
25 to Sport Court in response to Sport Court's subpoena. While Chamberlain's information was
26 provided to Sport Court pursuant to a protective order and is not included herein, a copy of the
27 produced material in question will be brought to the hearing in this matter. Google is clearly
28 withholding information relevant to Sport Court's subpoena which must be produced.

### III.   CONCLUSION

Based on the arguments and facts presented herein, this Court should order Google to produce documents responsive to Sport Court's requests as noted in more detail above.

DATED: November 14, 2007                  **MILLSTONE PETERSON & WATTS, LLP**
                                          *ATTORNEYS AT LAW*


                                          By:_____/s/ Glenn W. Peterson_____
                                                   GLENN W. PETERSON

                                          Attorneys for Plaintiff
                                          Connor Sport Court, Inc.

I hereby attest that I have on file all holograph signatures for any signatures indicated by a "conformed" signature (/s/) within this e-filed document.

**MILLSTONE PETERSON & WATTS, LLP**
*Attorneys at Law*
/s/ Glenn W. Peterson